**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GLENDA SMITH, | Case No. 1:12-cv-645 |
| Plaintiff, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Glenda Smith filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and remanded because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In August 2009, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of April 26, 2007 due to mental and physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An administrative hearing was held on September 8, 2010. (Tr. 29-49). At the hearing, ALJ Larry Temin heard testimony from Plaintiff and Janet Chapman, an impartial vocational expert. On September 30, 2010, the ALJ found that Plaintiff was under a

1

disability as defined by the Social Security Act, from October 1, 2008 through January 13, 2010.  (Tr. 43–44).  The ALJ further found that medical improvement occurred as of January 14, 2010, and Plaintiff was no longer under a disability as of that date.  Thus, the ALJ found that Plaintiff was entitled to SSI benefits for a closed period from October 1, 2008 through January 13, 2010.

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and has relevant work as a quality control worker and a packer.  Plaintiff was born in 1959 and was 47 years old on her alleged disability onset date.  Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "obesity, left shoulder rotator cuff tendinopathy, bilateral knee degenerative joint disease, and major depressive disorder." (Tr. 37).

In light of these impairments, the ALJ found that Plaintiff was disabled from October 1, 2008 through January 13, 2010 and granted Plaintiff's request for DIB for that time.  However, beginning on January 14, 2010, the ALJ determined a medical improvement occurred and as of that date, Plaintiff retained the following residual functional capacity ("RFC"):

> She can lift/carry only 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for 6 hours in an 8-hour workday and she could sit for 6 hours in an 8-hour work day. She could never kneel, crawl, or climb ladders, ropes, or scaffolds. She could only occasionally stoop, crouch, climb ramps and stairs, or reach above her shoulder with her left upper extremity.  Mentally, the claimant could perform only simple, routine, repetitive tasks.  She could remember and carry out only short and simple instructions. She could not interact with the general public and she could interact with coworkers and supervisors no more than occasionally.  Her

2

job could not require more than ordinary and routine changes in work setting or duties. She could make only simple work-related decisions.[1]

(Tr. 42). Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that beginning on January 14, 2010, Plaintiff could perform significant number of jobs in the national economy including such jobs as quality control, cleaner and stock clerk. (Tr. 44). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to DIB after January 14, 2010. (Tr.45 ).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that in finding a medical improvement occurred on January 14, 2010, the ALJ erred by (1) selectively reviewing the evidence; and (2) improperly weighing the opinion evidence. Upon close inspection, the undersigned finds Plaintiff's assignments of error to be well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

---

[1] From October 1, 2008 through January 13, 2013, the ALJ found Plaintiff's RFC to be identical to the one outlined above with the additional limitation that her mental impairments would cause her to miss 2-3 days of work per month, thereby causing her to be unable to sustain gainful work activity. (Tr. 38).

3

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

4

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Not Supported by Substantial Evidence**

*1. Relevant Evidence and the ALJ Decision*

The record indicates that Plaintiff suffers from depression, internal derangement of her shoulders, bilateral knee pain, left hip pain, cervical dysplasia (which caused abnormal bleeding and led to a hysterectomy), urinary incontinence, diabetes, COPD, and hypertension. Plaintiff's statement of errors, however, focuses primarily on the ALJ's evaluation of the record evidence relating to her depression. In this regard, the record reflects:

On October 20, 2008, Plaintiff underwent a psychological consultative examination conducted by Dr. Susan Kenford. (Tr. 257-262). Dr. Kenford observed that Plaintiff had somewhat disheveled hair, but appeared clean. (Tr. 258). Plaintiff's

5

social skills were "reasonably intact." *Id.* She exhibited some mild word-finding problems at times, such that occasionally there was a latency to her response and she would struggle to find the word she wanted. (Tr. 259). Plaintiff had a depressed affect and cried during the evaluation. *Id.* Dr. Kenford observed that Plaintiff's energy was low, and she appeared to have depressive ruminations. *Id.* Dr. Kenford diagnosed Plaintiff with Major Depression and assigned a Global Assessment of Functioning (GAF)[2] score of 35 for symptom severity and 45 for severity of functional limitations. (Tr. 261). She opined that Plaintiff would have marked limitations in her ability to sustain attention and concentration, observing that Plaintiff particularly struggled on tasks which required her to retain and manipulate information in her short-term memory stores. *Id.* She opined that Plaintiff would also have marked limitations in her ability to tolerate the stress and pressure of day-to-day work activity. (Tr. 262). For the remainder of the psychological work factors, Dr. Kenford opined that Plaintiff would have moderate limitations, even for being able to perform simple, repetitive tasks. *Id.*

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores between 41-50 as having serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work); and individuals with scores between 31-40 as showing some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

When Plaintiff's depression worsened considerably after her boyfriend of 25 years died, she sought help from her therapist at Central Clinic for suicidal ideation with a plan. (Tr. 377-379). She was taken to University Hospital for evaluation by their Psychiatric Emergency Service. *Id.* After being evaluated and monitored for eight hours, Plaintiff was released home in the care of her family, who were instructed to supervise her closely to ensure that she did not act on her suicidal ideation. (Tr. 379). Her discharge diagnosis was Depression with a GAF of 40. *Id.*

Thereafter, Plaintiff began treatment at Central Clinic in March 2009. (Tr. 421-429). At her intake appointment, Plaintiff was diagnosed with Major Depressive Disorder, Severe, without Psychotic Features, and assigned a GAF of 50 (indicating serious limitations). (Tr. 428-429). Plaintiff began treatment with therapist Phuonglon Vo, and has continued to see her throughout the course of her treatment at Central Clinic. (Tr. 420-449). Plaintiff treated with several different psychiatrists during that time frame; the one she saw most frequently was Aman Danielyan, MD. *Id.* Plaintiff's depression did show some signs of improvement with medication, but she continued to experience depression and anxiety. *Id.* In late July 2009, Plaintiff lost her health insurance and could not afford her medication, but she quickly got back onto medication. (Tr. 437). Plaintiff's medications had to be increased and changed several times during the course of her treatment at Central Clinic, and despite that, she continued to experience functional limitations from her depression and anxiety several days per week. (Tr. 433-441, 445, 449).

In October 2009, Plaintiff discussed with Dr. DeGreg, her primary care doctor at Price Hill Clinic, the increase in her depression which developed after her boyfriend's

7

death.  (Tr. 464). She described symptoms such as frequent headaches, worrying all the time, and scratching the back of her head until areas of skin opened up. *Id.*

January 2010 progress notes from Central Clinic indicate that Plaintiff reported improvement in her symtpoms, Plaintiff explained that she continued to have residual depression, and at the very next session, Plaintiff presented to her therapist as depressed and tearful, and stated "I don't love myself." (Tr. 440, 442).  Progress notes from March 25, 2010, reveal that Plaintiff told her therapist that some days she feels somewhat normal, but that she still has days when she cries for no reason and does not want to get out of bed; days such as those occurred 2-3 days per week.  (Tr. 445). Plaintiff explained that on her bad days, she felt like hurting herself, and she had to call her sister to help prevent herself from acting on those thoughts.  *Id.*

Plaintiff was evaluated by Dr. Lindsay Shotts on August 16, 2010.  In corroboration with Plaintiff's therapist, Dr. Shotts opined that Plaintiff is unable to meet competitive standards in completing a normal workday and workweek without interruptions from psychologically based symptoms and would be unable to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 494). Dr. Shotts reported that Plaintiff "continued to report significant distress from her depressive symptoms, including anhedonia, decreased motivation, difficulty interacting with groups of people, problems with concentration, and decreased energy." *Id.*  Dr. Shotts opined that Plaintiff has marked difficulties in maintaining concentration, persistence, or pace, and in maintaining social functioning. Dr. Shotts also opined that Plaintiff would miss more than four days of work per month due to symptoms of her psychiatric impairments.  (Tr. 497).

In addition, at the administrative hearing, Plaintiff testified that her psychological symptoms have improved; since starting at Central Clinic and taking medication, she has noticed that she is calmer in the sense that she is less aggressive than she used to be. (Tr. 91). However, even with her Cymbalta, Plaintiff stated that she has trouble sleeping, has a very low energy level, and her concentration and memory are poor. (Tr. 86).

In light of the foregoing, ALJ Temin found that medical improvement occurred as of January 14, 2010, and that as a result, Plaintiff would no longer miss 2-3 workdays per month. (Tr. 42). He found that, with the adjusted residual functional capacity, Plaintiff is unable to perform any past relevant work but that there are a significant number of other jobs which she could have performed after January 14, 2010. (Tr. 42-44). The ALJ therefore found that Plaintiff's disability ended on January 14, 2010. (Tr. 45).

In so concluding, the ALJ found that there was a decrease in Plaintiff's depressive symptoms as of January 14, 2010 because on that date, Plaintiff reported to her counselor that her depression had improved. Tr. 42. The ALJ's decision states in relevant part:

> Regarding the claimant's mental impairment, however, the claimant reported significant improvement in her depressive symptoms on January 14, 2010. She related fewer worries, increased optimism, increased energy, improved sleep, and a better ability to focus. On a follow-up visit in March 2010, she related significant improvement with Cymbalta and said she primarily feels normal. The claimant continued to report improvement in June 2010 and denied any sadness, apathy, or anhedonia.

(Tr. 42)

9

In finding medical improvement, the ALJ also rejected the mental residual functional capacity assessment provided by Lindsay Shotts, M.D. dated September 7, 2010. The ALJ assigned little weight to Dr. Shotts assessment because Dr. Shotts "evaluated the claimant on only one occasion prior to making her assessment and her clinical findings from the date of this evaluation are not in evidence. Moreover, her assessment is inconsistent with the treatment records since January 2010." (Tr. 42).

2. *ALJ's determination that a medical improvement occurred fails to comport with Agency Regulations and Controlling Law*

Plaintiff asserts that the ALJ improperly selectively reviewed the record evidence and improperly weighed the opinion evidence in making his determination that a medical improvement occurred. As noted above, the ALJ found that there was a decrease in Plaintiff's depressive symptoms as of January 14, 2010 because on that date, Plaintiff reported to her counselor that her depression had improved. Upon careful review, the undersigned finds that the ALJ's determination that a medical improvement occurred is not substantially supported and cannot be affirmed.

Medical Improvement is generally determined by comparing the prior and the current medical evidence, that is by "... changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1). Moreover, any medical improvement found to exist will relate to a claimant's ability to work only if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to work. 20 C.F.R. § 404.1594(b)(3). *Couch v. Comm'r of Soc. Sec.*, 1:11-CV-174, 2012 WL 930864 (S.D. Ohio Mar. 19, 2012).

Under 42 U.S.C. § 423(f)(1), the Commissioner may not find a disabled person to be no longer under a "disability" unless such a finding is supported by "substantial evidence which demonstrates that (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work); and (B) the individual is now able to engage in substantial gainful activity." SSA regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 2 0 C .F. R. § 404.1594(b)(1).

It is the Commissioner's ultimate burden of proof to establish that the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 Fed. Appx. at 764-765. Any medical improvement found to exist will relate to a claimant's ability to work only if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to work. 20 C.F.R. § 404.1594(b)(3).

Here, the ALJ's determination that Plaintiff's condition had improved and that depression would no longer cause her to miss 2 - 3 days of work per week indicates that he inserted his own non-medical opinion relating to the limitations caused by Plaintiff's depression. This was clear error. The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. See *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). While an ALJ is free to resolve issues of credibility as to lay testimony,

11

or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187-88 (E.D.Mich.1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In this case, the ALJ impermissibly acted as his own medical expert by determining that the record evidence, since January 2010, established that Plaintiff was capable of gainful employment. This determination was not based on any medical opinion and was clearly based upon his own independent medical findings. Notably, the only medical opinion of record after January 2010 was that of Dr. Shotts. However, the ALJ rejected Dr. Shotts' finding because she "evaluated the claimant on only one occasional prior to making her assessment" and "her assessment is inconsistent with the treatment records since January 2010. The ALJ's finding in this regard also is not supported by substantial evidence.

First, contrary to the ALJ's findings, the Sixth Circuit has concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and

12

where no psychological testing had been conducted. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989). In *Blankenship*, the Sixth Circuit further noted:

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

(quoting *Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C.Cir.1987) (other citation omitted).

Moreover, as noted above, Dr. Shotts opinion was not based solely upon her own observations during that first appointment with Plaintiff, but was based also upon two years worth of treatment notes from Central Clinic[3]; furthermore, Dr. Shotts explicitly stated that she discussed Plaintiff's case with Plaintiff's therapist, who had treated her for a year and a half. (Tr. 493). Thus, the ALJ improperly rejected Dr. Shotts findings on the bases that she examined Plaintiff on only one occasion.

Furthermore, as outlined above, the reasons given by the ALJ in rejecting Plaintiff's treating psychologists' findings was based, in part, on the ALJ's own interpretation of the medical evidence (*i.e.*, that Dr. Shott's findings were inconsistent with the treatment records since January 2010), and therefore do not qualify as "good reasons" as required under the regulations. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004) (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of

---

[3] Central Clinic is a government mental health clinic, where the mental health practitioners cycle regularly as they begin and complete various training sessions, but each mental health practitioner at Central Clinic has access to his or her predecessor's progress notes.

13

record). As found by the Sixth Circuit in *Wilson*, even where the decision of the Commissioner is supported by substantial evidence, reversal is required where the agency fails to follow its own procedural regulations and where the regulation was intended to protect applicants. *Id.*

Last, the undersigned recognizes that both the Commissioner and the ALJ note that Dr. Shotts did not attach any treatment notes to her assessment (Tr. 42). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) ("[A]ny claim by Dr. Austin that Walters suffered from impairments of disabling severity would not be supported by detailed, clinical, diagnostic evidence in his reports."). However, Dr. Shotts's assessment was formulated in collaboration with Plaintiff's therapists at Central Clinic and treatment notes from Central Clinic are part of the record. Furthermore, as noted above, the report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation. *Blankenship*, 874 F.2d at 1121. In light of the foregoing the undersigned finds that this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand,

14

the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: The decision of the Commissioner to deny Plaintiff SSI benefits after January 14, 2010 be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) for specific findings on the issues of whether Plaintiff's impairments medically improved after January 14, 2010, and whether she remained functionally disabled after that date due her depression.

     *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

GLENDA SMITH,                          Case No. 1:12-cv-645

       Plaintiff,                              Beckwith, J.
                                                       Bowman, M.J.
    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16